UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Respondent,<br><br>    v.<br><br>BART M. PITCHER,<br><br>                    Defendant-Movant. | Case No. 4:12-cv-00361-BLW<br>           4:08-cr-00344-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Bart M. Pitcher's ("Pitcher") Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) and (Crim. Dkt. 462), the Government's Motion to Dismiss (Civ. Dkt. 6), and Pitcher's Motion for Hearing (Civ. Dkt. 11). Having reviewed the Motions, responses, and the underlying criminal record, the Court enters the following Order granting the Government's Motion to Dismiss, dismissing the § 2255 Motion, and finding the Motion for Hearing moot.

## BACKGROUND

The path from arraignment to sentencing in this case was a long and convoluted one involving changes in attorneys, consulting with two attorneys simultaneously, withdrawal of a plea, and ambivalence about entering a second plea. To place Pitcher's

**MEMORANDUM DECISION AND ORDER - 1**

claims in the appropriate context, the Court finds it necessary to give a detailed account of the procedural background of the underlying criminal case.

On December 16, 2008, the Government indicted Michael Jay Bell alleging one count of possession with intent to distribute 50 grams or more of methamphetamine. *See Indictment*, Crim. Dkt. 1. The Government superseded the initial Indictment on February 24, 2009, to add conspiracy, money laundering, and forfeiture counts. *See Superseding Indictment*, Crim. Dkt. 4. On May 27, 2009, the Government filed a Second Superseding Indictment adding five defendants including Pitcher. *See Second Superseding Indictment*, Crim. Dkt. 23. Pitcher was charged with conspiracy to distribute 500 grams or more of methamphetamine spanning the period from on or about July 2006 through April 28, 2009 (Count One), conspiracy to launder money (Count Five), drug forfeiture (Count Six), and money laundering forfeiture (Count Seven). *Id*.

On June 16, 2009, Pitcher was arraigned by United States Magistrate Ronald E. Bush who conditionally appointed Tony Sasser to represent Pitcher pending his finalizing arrangements to retain David Penrod. *Minutes*, Crim. Dkt. 46. Pitcher and his counsel of choice did not reach an agreement, so Attorney Sasser agreed to represent Pitcher as retained counsel upon receipt of a retainer. *Minutes*, Civ. Dkt. 55. On July 1, 2009, Blake Atkin (the attorney representing Pitcher in this § 2255 proceeding) filed a Motion for Bill of Particulars (Crim. Dkt. 65) and a Notice of Appearance the following day (Crim. Dkt. 66). Three weeks later, on July 23, 2009, David Maguire and David Penrod

(the attorney Pitcher initially sought to retain) filed a Substitution of Counsel. Crim. Dkt. 67.

On August 25, 2009, the Government filed a Third Superseding Indictment adding two more Defendants. *Third Superseding Indictment*, Crim. Dkt. 88. The charges against Pitcher remained the same. *Id.* On April 21, 2010, the Government filed a Superseding Information against Pitcher alleging a sentencing enhancement pursuant to 21 U.S.C. § 851 based on prior felony drug convictions in Franklin County, Idaho, and Cache County, Utah. Crim. Dkt. 179. Pitcher entered into a Plea Agreement on April 26, 2010 pursuant to which he agreed to plead guilty to conspiracy to distribute 500 grams or more of methamphetamine as charged in Count One and agreed to the forfeiture allegation in Count Six. *Plea Agreement*, Crim. Dkt. 193. The Plea Agreement stated that the offense was punishable by a term of imprisonment of life. *Id.* at ¶ IV.A. It also contained a cooperation provision in which the Government agreed to request a downward departure pursuant to USSG § 5K1.1[1] and relief from the mandatory minimum sentence pursuant to 18 U.S.C. § 3553(e)[2] if Pitcher provided substantial assistance in the investigation of others. *Id.* at ¶ VI(C).

---

[1] USSG § 5K1.1 provides: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

[2] 18 U.S.C. § 3553(e) provides in relevant part: "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as (Continued)

On May 25, 2010, Pitcher, represented by Attorney Penrod, entered his plea to the conspiracy charge in Count One before Judge Bush in return for dismissal of Counts Five and Seven of the Third Superseding Indictment. *Minutes*, Crim. Dkt. 246. Attorney Penrod had represented Pitcher in other matters since approximately 2003. *Plea Tr. (5/25/2010)* at 12. Judge Bush entered a Report and Recommendation to the district court concluding that the plea was knowing and voluntary and recommending acceptance of the plea. *Report and Recommendation*, Crim. Dkt. 248.

On June 10, 2010, prior to entry of an order adopting the Report and Recommendation, Pitcher filed a pro se Motion to Withdraw Guilty Plea claiming that he wanted to speak with counsel regarding "new information" and "how to proceed," presumably in light of that unspecified new information. Crim. Dkt. 262. The Court denied the Motion without prejudice to refiling after consultation with counsel. *See Order*, Crim. Dkt. 263. On June 21, 2010, Attorneys Penrod and Maguire filed a Motion to Withdraw as counsel on the grounds of fundamental differences of opinion, Pitcher's failure to follow advice of counsel, an irremediable breakdown in the attorney-client relationship, Pitcher's desire to terminate the relationship and refusal to speak with counsel, Pitcher's pro se Motion to Withdraw, and the fact that Pitcher had been

_____

to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

consulting with Attorney Ron Swafford for several months regarding the case during the time they were representing Pitcher. *Motion to Withdraw*, Crim. Dkt. 264. On June 25, 2010, Ronald Swafford and Larren Covert appeared on Pitcher's behalf. *Notice of Appearance*, Crim. Dkt. 266. The Court then granted Penrod and Maguire's Motion to Withdraw as counsel. *Docket Entry Order*, Crim. Dkt. 269.

Represented by new counsel, Pitcher filed an Amended Motion to Withdraw Plea of Guilty claiming, among other things, that he was innocent of at least the quantity of drugs attributed to him, that he had not received assurances of a four-point sentencing reduction for providing testimony "on another matter" despite having provided the Government with a recorded statement, that his former attorney had "persuaded" him "to plead guilty to a charge . . . that the Defendant denies he is guilty of" on the theory that he would receive a lesser sentence, that he was inadequately advised regarding the sentencing guidelines and the consequences of entering a plea, and that he was being "excessively prosecuted and unfairly treated" due to a prior experience with AUSA Fica. Crim. Dkt. 267. Pitcher also stated that although he was told he would not serve more than 18-24 months based on the guidelines, he believed he would be facing up to five years of incarceration. *Pitcher Aff.* at 2, Crim. Dkt. 267-1. The Court granted the Motion on the grounds that Pitcher could withdraw his plea for any or no reason because the Court had not yet adopted Judge Bush's Report and Recommendation. *Order*, Crim. Dkt. 288.

**MEMORANDUM DECISION AND ORDER - 5**

On November 24, 2010, Pitcher, through Attorney Swafford, filed a Motion to Suppress all pre-Indictment statements Pitcher made on April 29, 2009 to Detectives Skinner and Kemp in connection with their investigation of the case. *Motion to Suppress*, Crim. Dkt. 344. On January 14, 2011, he filed a Motion for Independent Testing of Evidence (Crim. Dkt. 355) to test the drugs for identification and purity. On January 15, 2011, he filed a Motion to Compel Discovery and Sanctions (Crim. Dkt. 356) alleging that the Government had not responded to his October 8, 2010 discovery request. Following oral argument, the Court denied the Motion to Suppress. *Mem. Dec. and Order*, Crim. Dkt. 361. Approximately two weeks later, on February 3, 2011, Pitcher entered into a second Plea Agreement pursuant to which he agreed to plead guilty to Count One of a Superseding Information charging him with conspiracy in return for the dismissal of Counts One, Five, Six, and Seven of the Third Superseding Indictment. *Plea Agreement*, Crim. Dkt. 365.

In this second Plea Agreement, Pitcher admitted that he became aware of the conspiracy in January 2008 and joined it at some time thereafter, that the conspiracy involved distribution of in excess of 50 grams of methamphetamine (as opposed to the 500 grams or more alleged in the Third Superseding Indictment and in the first Plea Agreement) and that he received and distributed that amount himself. *Id*. at ¶ III, B. The Plea Agreement stated that the charge was punishable by a term of imprisonment of ten years to life. *Id*. at ¶ IV.A. It did not contain a cooperation provision allowing for the possibility of the Government's moving for a § 5K1.1 departure for providing substantial

assistance in the prosecution of another person and a related 18 U.S.C. § 3553(e) relief

from the mandatory minimum.  *Id*. at ¶ V.

On February 14, 2011, the Government filed the contemplated Superseding

Information.  Crim. Dkt. 371.  It also filed an Amended Superseding Information

regarding the 21 U.S.C. § 851 sentencing enhancement based on the same two felony

drug convictions noted in the initial sentencing enhancement Superseding Information.[3]

Crim. Dkt. 372.  Notice was given therein that the enhancement would subject Pitcher to

increased punishment of a term of ten years to life imprisonment as had been noted in the

Plea Agreement.  *Id*.

At the arraignment and change of plea hearing held on February 14, 2011, this

Court found Pitcher competent to enter a plea but continued the hearing until March 2,

2011 upon Pitcher's request for additional time to decide whether to enter the plea.

*Minutes*, Crim. Dkt. 373.  At the continued hearing, Pitcher advised the Court that he

would not go through with entering a plea.  *Minutes*, Crim. Dkt. 399.  However, the

parties continued negotiating.  Later in the afternoon, the Government filed a Second

Superseding Information (Crim. Dkt. 396) that narrowed the period of Pitcher's

membership in the conspiracy and added a provision reflecting an agreement on the drug

---

[3] On February 15, 2011, the Government filed a Second Amended Superseding Information
(Crim. Dkt. 374) which is identical to the Amended Superseding Information (Crim. Dkt. 372) except for
a correction to the heading.

forfeiture. The parties submitted another Plea Agreement (Crim. Dkt. 397) with the relevant changes, and Pitcher then entered a plea of guilty to the Second Superseding Information. *Minutes*, Crim. Dkt. 399.

On May 5, 2011, Attorney Swafford filed Objections to Presentence Report and Notice of Intent to Seek Downward Departure and Variance 18 § 3553(a) (Crim. Dkt. 406) objecting to the inclusion of much of the information as being unrelated to or involving Pitcher, challenging the reliability of the statements of various co-Defendants and even Pitcher's own statements, objecting to the offense level and criminal history computations, challenging the predicate sentencing enhancement convictions, requesting a four-level § 5K1.1 departure alleging that the Government withdrew the departure as a "penalty" against Pitcher for filing the Motion to Suppress and withdrawing his earlier guilty plea,[4] and seeking a variance on several other grounds, including challenges to prior convictions. *Objections* at 30.

On May 23, 2011, Attorney Swafford filed a Sentencing Memorandum and Request for Downward Departure and Variance 18 § 3553(a) (Crim. Dkt. 408) which restated and in some cases elaborated on the arguments in the Objections, requested a § 5K1.1 departure, and concluded with a request that Pitcher be sentenced to probation, drug treatment, home detention, and community service. *Sent. Mem*. at 20. Attorney

---

[4]   The Court flatly rejected this contention when addressing the issue at the sentencing hearing. *Sent. Tr.* at 223.

Swafford was apparently unaware that such a sentence was not possible given the § 851 enhancement based on convictions that could not be challenged because they occurred more than five years prior to the date of filing of the § 851 information. *See* 21 U.S.C. § 851(e).

On May 26, 2011, the Court heard testimony from three co-Defendants and Detective Skinner on behalf of the Government and four witnesses on behalf of Pitcher in mitigation. *Minutes*, Crim. Dkt. 422. Pitcher made a statement on his own behalf to the Court. *Id.* On May 27, 2011, the Court heard arguments and recommendations of counsel and imposed a sentence of 144 months, a variance from the guideline range of 151-188 months.[5] *Minutes*, Crim. Dkt. 423; *Judgment*, Crim. Dkt. 424.

On June 6, 2011, Pitcher, through counsel, filed a Notice of Appeal. Crim. Dkt. 425. On August 23, 2011, Attorneys Swafford and Covert filed a Motion to Withdraw as Attorneys of Record (Crim. Dkt. 438) on the grounds that Pitcher and/or his family had hired "separate counsel" who had "previously appeared" causing a conflict and an "irreparable rift" in the attorney-client relationship. The Court granted the Motion. *Docket Entry Order*, Crim. Dkt. 440. On July 6, 2012, the Ninth Circuit dismissed Pitcher's appeal after finding a valid appeal waiver. *USCA Order*, Crim. Dkt. 460. The

---

[5] The original guideline range was calculated at 168-210 months. However, the Probation Officer recommended that the criminal history category be reduced from III to II (with the resultant reduction in range to 151-188 months) on the grounds that the criminal history was likely overstated. The Court agreed with the recommendation.

Ninth Circuit declined to address ineffective assistance of counsel issues. *Id.* Pitcher,

through Attorney Atkin (who had briefly represented Pitcher initially), thereafter timely

filed the pending § 2255 Motion.

## STANDARD OF LAW

**1.     28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may

grant relief to a federal prisoner who challenges the imposition or length of his or her

incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws

of the United States;" (2) "that the court was without jurisdiction to impose such

sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and

(4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal

district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion,

any attached exhibits, and the record of prior proceedings that the moving party is not

entitled to relief." "Under this standard, a district court may summarily dismiss a § 2255

motion only if the allegations in the motion, when viewed against the record, do not give

rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States

v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted).

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the

Government "to file an answer, motion, or other response within a fixed time, or to take

other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

**2.      Ineffective Assistance of Counsel**

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984). Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id*. at 689. This is so because for the defendant, "[i]t is all too tempting . . . to second-guess

counsel's assistance after conviction or adverse sentence. . . ." *Id.* For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman v. Morrision,* 477 U.S. 365, 381-82; 386 (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

As recently reiterated by the Supreme Court, a defendant's right to effective assistance of counsel has long been held to apply to the plea process. *See Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same *Strickland* standard applies to claims of ineffective assistance of counsel at the plea stage. *Hill*, 474 U.S. at 58.

## DISCUSSION

**Memorandum Decision And Order - 12**

Pitcher seeks to have his plea withdrawn and his sentence vacated. The Supreme Court has recognized that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks" of a plea. *Premo v. Moore*, 131 S.Ct. 733, 741 (2011). Not only is the decision to enter a plea a difficult decision, a decision to seek withdrawal of a favorable Plea Agreement after sentencing is difficult as well. To collaterally challenge a guilty plea and request that it be set aside involves assuming considerable risk given that a successful challenge will result in the loss of any benefits provided by the plea bargain (such as dismissal of a more serious charge) and "may result in a less favorable outcome." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).

In his counseled § 2255 Motion, Pitcher alleges that he did not receive effective assistance of counsel (1) relating to the withdrawal of his first plea, and (2) in pleading guilty the second time. Pitcher claims that his plea was not knowingly and voluntarily made because he would not have pleaded guilty the second time had he known that he would have to spend at least ten years in prison especially given that he withdrew the first plea in part because he thought he would receive a five-year sentence.

The Court notes that the Motion is not supported by affidavits of either Pitcher or Attorney Swafford containing any specifics as to Mr. Swafford's advice regarding the decision to withdraw the first plea agreement or the decision to enter the second plea negotiations. It is simply the representations of current counsel. While presumably those

representations are based on discussions with Pitcher, they were not made by Pitcher under oath and they are not supported by any documentation.

The Government responds that Pitcher waived his claims pursuant to the Plea Agreement, that counsel's strategic decisions were reasonable when advising Pitcher to withdraw his original plea, that any deficiency of counsel in not advising him of the ten-year mandatory sentence during the second plea negotiations was cured by the Court's statements in the plea colloquy, and that in any event, Pitcher cannot demonstrate prejudice.

To obtain the requested relief, Pitcher must overcome the waiver provision contained in his Plea Agreement by demonstrating that Attorney Swafford's performance was deficient.

## 1.     Waiver

A defendant may waive his statutory right to file a § 2255 motion challenging his sentence.  *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.), *cert. denied*, 508 U.S. 979 (1993).  However, a plea agreement must expressly state that the right to bring a § 2255 motion is waived in order for the waiver to be valid.  *United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994) (finding that language in plea agreement that "he will not appeal whatever sentence is imposed by the court" did not constitute a waiver of the right to bring a § 2255 motion).  "The sole test of a waiver's validity is whether it was made knowingly and voluntarily."  *United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000).  The scope of such a waiver is demonstrated by the express language of the plea

agreement. *Id.* Nevertheless, even an express waiver may not bar an ineffective

assistance of counsel claim challenging the knowing and voluntary nature of the plea

agreement or the voluntariness of the waiver itself. *United States v. Jeronimo*, 398 F.3d

1149, 1156 n.4 (9th Cir. 2005) *overruled on other grounds by United States v. Jacobo*

*Castillo*, 496 F.3d 947, 957 (9th Cir. 2007). *See also Washington v. Lampert*, 422 F.3d

864, 870 (9th Cir. 2005) (same in context of § 2254 habeas petition).

### A.    Plea Agreement

The Plea Agreement at issue expressly stated that the right to bring a § 2255

motion was waived:

> A.      In exchange for this Agreement, and except as
> provided in subparagraph B, the defendant waives any right
> to appeal or to *collaterally attack* the conviction, entry of
> judgment, and sentence. The defendant acknowledges that
> this waiver shall result in the dismissal of any appeal or
> *collateral attack* the defendant might file challenging the
> plea, conviction or sentence in this case. . . .

> B.      Notwithstanding subparagraph A, the defendant shall
> retain the right to file one direct appeal only if . . . .

> Notwithstanding subparagraph A, *the defendant may*
> *file one habeas petition (motion under 28 U.S.C. § 2255) for*
> *ineffective assistance of counsel only if: (1) the motion is*
> *based solely on information not known to the defendant at the*
> *time the District Court imposed sentence; and (2) in the*
> *exercise of reasonable diligence, the information could not*
> *have been known by the defendant at that time*.

*Plea Agreement* at 7-8 (emphasis added), Crim. Dkt. 397 at 8-9.

Pitcher has alleged nothing in his § 2255 Motion that was not known to him or that could not have been known by him in the exercise of reasonable diligence at the time the Court imposed sentence. Therefore, a valid plea waiver would require dismissal of the pending § 2255 Motion.

### B. Voluntary and Intelligent Plea

A guilty plea is constitutionally valid only if it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A guilty plea is deemed valid when a defendant is advised of the nature and elements of the charges against him as well as the possible punishment and understands that he is waiving his constitutional rights to avoid self-incrimination, to confront his accuser, and to have a jury decide his case. *See Brady*, 397 U.S. at 749. *See also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Furthermore, to be valid, a plea must not be made based on threats, misrepresentations, or improper promises. *Brady,* at 755. Here, the record is clear that the colloquy at the second change of plea hearing on March 2, 2011 was very thorough and formed the basis for a knowing and voluntary plea based on Pitcher's sworn testimony.

First, the Court found that Pitcher was competent to enter a plea. *Plea Tr. (3/2/2011)* at 28-29, Crim. Dkt. 449. Pitcher testified that he had adequate time to discuss his case with his attorney and was satisfied with his representation. *Id.* at 30. He stated that he understood the charges and that no threats or promises had been made to induce him to waive indictment. *Id.* at 31-32. The Court advised Pitcher that based on

the § 851 information, the mandatory minimum sentence was ten years. *Id.* at 35. The Court explained the sentencing process, including the calculation of the guidelines and the effect of criminal history on the guideline range and Pitcher stated that he understood. *Id.* at 36-41. The Court reiterated, "Just so we're clear, there is a ten-year mandatory minimum on the Count 1." *Id.* at 43. Pitcher stated that he understood. *Id.* at 44. The Court also advised him that a sentence of probation was not available because the maximum sentence exceeded 25 years, and he stated he understood. *Id.* at 44.

After Pitcher testified that he agreed with the factual basis of the Plea Agreement, the Court thoroughly reviewed the various provisions of the Plea Agreement, and Pitcher stated he had reviewed each and every provision before signing it. *Id.* at 46-49. He testified that he had not only read each provision but had an opportunity to review the provisions with counsel, that he fully understood each provision before signing the Plea Agreement, and that he understood that he had waived some or all of his rights to pursue habeas corpus relief. *Id.* at 49-50.

Most importantly, as relevant here, Pitcher testified that no one had made any promises other than those in the Plea Agreement to induce him to plead guilty. *Id.* at 50-51. The Court then probed that issue by inquiring:

> Now . . . I'm asking you for an integration agreement, that whatever was discussed early on throughout the negotiations has been integrated into the plea agreement so there is nothing else, no side deals, nothing left that you agreed upon but somehow didn't find its way into the plea agreement; is that correct?

*Plea Tr.(3/2/2011)* at 51.  Pitcher responded, "That's correct."  *Id.*

After restating that the Court is not bound to accept the Government's sentencing recommendation and that it has the authority to depart from the guidelines and impose a sentence shorter or longer than that called for by the guidelines, the Court advised Pitcher that he could not withdraw his plea even if the sentence imposed was greater than the guideline range.  *Id.* at 52-53.  When the Court again asked Pitcher if anyone had made any prediction or promise as to what his sentence would be, he replied, "No, Your Honor."  *Id.* at 53.

Statements made in open court at the time of a plea carry a strong presumption of verity and are entitled to great weight.  *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Kazcynski*, 239 F.3d 1108, 1114-15 (9th Cir 2001) ("substantial weight" must be given to in-court statements).  Even though that presumption is not necessarily an insurmountable barrier to an evidentiary hearing, the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Id.* (citations omitted).

Even if counsel had erroneously advised Pitcher that he could receive a sentence of less than ten years, the Court corrected that error and thus Pitcher was not prejudiced by that erroneous advice.  *See United States v. Thornton*, 23 F.3d 1532, 1533 (9th Cir. 1994) (per curiam).  *See also United States v. Valencia*, 2014 WL 5454462 at  *3 (S.D. Cal. Oct. 27, 2014) (citations omitted).

MEMORANDUM DECISION AND ORDER - 18

The Plea Agreement, plea colloquy, and Pitcher's sworn testimony during the plea hearing amply demonstrate that Pitcher was well aware of the ten-year mandatory minimum sentence. The Plea Agreement had no cooperation provision that would suggest the possibility of a lower sentence. The Court said nothing that would indicate to Pitcher that there was a possibility of a lower sentence. Therefore, the waiver is binding unless the plea was induced by the alleged ineffective assistance of counsel.

**2.     Ineffective Assistance of Counsel**

**A.     Withdrawal of First Plea**

Pitcher contends that counsel was ineffective (1) in advising him to withdraw his first plea because it precluded him from ever receiving a substantial assistance departure, and (2) in failing to facilitate cooperation efforts. To the extent that the alleged ineffectiveness at this stage could be construed as having some bearing on the voluntariness of his second plea entered over a year later, the Court will address the claim.

As stated above, Pitcher had second thoughts after entering the first plea because, despite the Plea Agreement, the Government had not indicated after the plea hearing that it would move for an allegedly promised four-level substantial assistance departure. Indeed, Pitcher's concerns were likely well-founded given that the Government did not respond to his Motion to Withdraw with assurances that such a motion would be forthcoming.

The Court notes that, despite Pitcher's claims, a § 5K1.1 motion was not a foregone conclusion at the time of the first plea hearing. AUSA Fica did not say that Pitcher *would* qualify for relief. Rather, he said "[w]e anticipate that Mr. Pitcher – Mr. Pitcher has provided substantial assistance to date, and we *anticipate* that he will continue to do so. *If* he continues to do so, in compliance with the plea agreement, it's the government's anticipation that he will qualify for the provisions of § 3553(e), and the mandatory minimum sentence will essentially become null and void and the guideline sentence will control." *Plea Tr. (5/25/2010)* at 5 (emphasis added).

At the plea hearing, Judge Bush referred to his discussion at the start of the hearing "about the *possibility* that there might be an opportunity for you to avoid the mandatory life prison sentence, based upon the *possibility* for the Court to accept the government's recommendation for such, based upon cooperation, but there's *no guarantee* of such." *Plea Tr. 5/25/2010* at 17 (emphasis added). He asked Pitcher if he understood, and Pitcher responded that he did. He asked if the fact that there was no guarantee of the departure affected his decision as to whether or not to plead guilty. *Id.* Pitcher replied, "No, Your Honor. It's what we need to do." *Id.*

Judge Bush also stated later in the hearing, "*If* you cooperate with the government and provide substantial assistance to investigating authorities, the sentencing judge is permitted, but not required to impose a sentence below the recommended guideline range." *Id.* at 33 (emphasis added). He reminded Pitcher once more that the Court was not bound by any recommendations of the Government. *Id.* 35. Pitcher stated under oath

**MEMORANDUM DECISION AND ORDER - 20**

that he was aware that it was the Government's decision whether to move for the departure and the Court's prerogative to deny the motion.

It is apparent from the record that given Pitcher's vacillation, and presumably knowing that a departure was not forthcoming, Attorney Swafford employed a different strategy to lessen Pitcher's sentencing exposure. Attorney Swafford sought to have Pitcher's statements to Detectives Skinner and Kemp suppressed. That he failed in this effort does not render his performance deficient. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *See Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010) (citing *Strickland*, 466 U.S. at 690 and *United States v. Mayo*, 646 F.3d 369, 375 (9th Cir. 1981) (per curiam)). Indeed, considerations surrounding these strategic choices in the pre-trial context "make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo*, 131 S.Ct. at 741.

Pitcher's claim that withdrawing his first plea precluded him from ever receiving a substantial assistance departure is baseless. While in any given case the Government may be more likely to move for a substantial assistance departure based on a defendant's cooperation earlier in a case, there is no prohibition against offering or making such a motion at a later time with or without a Plea Agreement. Indeed, § 3553(e) motions can be made even after a conviction under certain circumstances. *See* Fed. R. Crim. P. 35(b). Most significant about this hollow claim, however, is that Pitcher does not state what information or assistance he did or could have provided against another person that

would have prompted the Government to seek the departure. He argues that counsel had a duty to facilitate cooperation rather than withdrawal of the plea. However, that facilitation cannot occur without a defendant's possessing and being willing to provide such information. As stated above, Pitcher has not alleged what information he would have provided or even that he had information to provide. His bald assertions unsupported by specifics are not sufficient to warrant an evidentiary hearing.

At sentencing, AUSA Fica explained his decision not to file a § 5K1.1 motion:

> Your Honor, Mr. Pitcher did provide some limited information, more with regard to his own involvement in this case than anything, early on in this case. The problem with that information, Your Honor, is it was just very much not useful to us at all. And to the extent that Mr. Pitcher provided information about other people, that information, as well, was not useful for several reasons: First of which, Mr. Pitcher has recanted many of the statements that he made in this case.
>
> Secondly, Mr. Pitcher withdrew his plea agreement, and the put us in a position where, quite frankly, we couldn't rely on the fact that he was a potential witness for us.

*Sent. Tr.* at 183. It was Pitcher's failure to provide information that qualified as substantial assistance – not counsel's advising withdrawing the plea – that precluded a § 5K1.1 motion and departure.

Finally, and most importantly, had Pitcher not withdrawn his first plea, and had the Government determined that Pitcher had not provided substantial assistance, or had the Court not granted any § 5K1.1/§ 3553(e) motion made by the Government, the Court would have been required to impose the mandatory life sentence. In any event, even if

**MEMORANDUM DECISION AND ORDER - 22**

the Government had filed a § 5K1.1/§ 3553(e) motion, it is unlikely that Pitcher's sentence would have been less than ten years given that the Court sentenced him to 144 months despite having the discretion to sentence him to as little as ten years. Furthermore, because the statutory minimum of life was greater than the otherwise applicable guideline range, the departure point would have started from that life sentence rather than from the guideline range. *See United States v. Auld*, 321 F.3d 861, 866 (9th Cir. 2003). *See also United States v. Jackson*, 577 F.3d 1032 (9th Cir. 2009) (applying *Auld* post-*Booker*). In other words, the Court would not have used the guideline range of 151-188 as a starting point for the departure. Thus, the guideline range after the allegedly promised four-level departure would have been considerably higher before consideration of any mitigating factors, and the likelihood that he would have received the less than five-year sentence he allegedly expected at the time is virtually nil.

The Court finds that, under the circumstances, Mr. Swafford was not ineffective for advising Pitcher to withdraw his first plea and to proceed with the motion to suppress. After losing the motion to suppress, he negotiated a second Plea Agreement to a lesser charge with a substantially reduced mandatory minimum. The Court can find neither deficient performance nor prejudice for advising Pitcher to withdraw his first plea.

**B.    Second Plea**

Pitcher claims that Attorney Swafford was deficient for advising him to plead guilty to the reduced charge when he knew or should have known that Pitcher's sentence would be at least ten years given the § 851 Information and the lack of a § 5K1.1 motion.

Whether or not counsel's performance was deficient is irrelevant if there was no prejudice as both of *Strickland*'s prongs must be met to be entitled to relief. In evaluating an ineffective assistance of counsel claim, a court may consider the performance and prejudice components of the *Strickland* test in either order. *Strickland*, 466 U.S. at 697.

To the extent that Pitcher claims that Attorney Swafford induced him to plead guilty by advising that his sentence would or at least could be under ten years, the claim must fail. First, as stated above, Pitcher offers no evidence or documentation in support of the claim. *See Valencia*, 2014 WL 5454462 at * 3 (noting that Petitioner presented no evidence of an alleged promise of a five-year sentence and his assertion was undermined by the plea hearing transcript). Second, despite his assertions to the contrary, as the record reflects and as discussed above, Pitcher knew that the mandatory minimum sentence was ten years. Third, any deficiency at the time of the plea was cured by the Court's plea colloquy.

Pitcher also claims that the Court led him to believe at the plea hearing that he could receive relief from the mandatory minimum. He refers to Judge Bush's and AUSA Fica's statements at the first plea hearing that the cooperation provision would render the statutory minimum "null and void" and claims they led him to believe that a ten-year sentence was not a foregone conclusion. *Plea Tr. (5/25/2010)* at 5; 17. That Pitcher would remember those statements from a hearing 18-months earlier and rely on those statements in pleading the second time without a cooperation agreement is simply not credible.

Even if Pitcher did believe initially that a sentence below the mandatory minimum was still possible, the Court's colloquy at the second plea hearing and Pitcher's responses belie that claim. He knew at the time he entered the second plea that the second Plea Agreement did not contain a cooperation provision. Therefore, he would not have any basis for believing that the ten-year mandatory minimum would be "null and void."

Pitcher also claims that general statements this Court made at the second change of plea hearing led him to believe that the mandatory minimum could be avoided. Pitcher states that "the Court mentioned in passing that the count under discussion carried a mandatory minimum sentence of ten years" but it was not explained that he would spend ten years if he pleaded guilty. *§ 2255 Mem.* at 3. He continues "[i]n fact, the Court made statements during the colloquy that would lead a reasonable man in his shoes to believe that he had an opportunity to receive a 'no prison' sentence and indications that he could receive relief from a harsh sentence because of cooperation." *§ 2255 Mem.* at 4; 7-8. Pitcher is grasping at straws. The Court emphasized that its comment was simply an example of a departure when speaking in general terms about the sentencing process. *Sent. Tr.* at 39; 52. It separately advised Pitcher of the mandatory minimum specifically applicable to his case. *Sent. Tr.* at 35; 43-44. Pitcher knew that there was no cooperation provision in the second Plea Agreement. He knew that any prediction of counsel as to his sentence was just that and not a promise.

Finally, even assuming Attorney Swafford's performance was deficient or the Court's comments created some confusion, Pitcher's "post-hoc" claim that he would have

gone to trial if he had known his sentence would be at least ten years is not sufficient to establish prejudice. In guilty plea situations, part of the prejudice inquiry focuses on the likelihood of receiving different advice or a more favorable outcome at trial than a defendant got as a result of the guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See also DeRoo v. United States*, 223 F.3d 919, 925-26 (8th Cir. 2000) (defendant's assertion that he would have gone to trial had his counsel not failed to file a motion to dismiss did not establish prejudice where there was no reasonable probability that the motion would have been successful).

Here, Pitcher had already failed in his efforts to have his statements suppressed. And, at the very least, the three co-Defendants who testified for the Government at the sentencing hearing and whose testimony corroborated Pitcher's statements would have testified at trial. There is no reasonable probability that he would have prevailed at trial.

Because Pitcher cannot show uncured error or prejudice, his claim of ineffective assistance of counsel at the second plea stage fails to meet the *Strickland* standard.

## CONCLUSION

Pitcher was obviously ambivalent about entering a plea of guilty. However, it was ultimately his choice to do so. He did so even after the Court, well aware of his ambivalence, specifically stated on two occasions that it encourages trials in situations where a defendant has reservations about his guilt or difficulty accepting or admitting that he has done what the Government has accused him of doing. *See Plea Tr. (3/2/2011)*

at 16-17; 24-25.  That the sentence imposed was greater than he expected does not constitute grounds for relief.

It is very disturbing that Mr. Swafford erroneously thought at the time he submitted  the sentencing memorandum and even at the beginning of the sentencing hearing itself, that mitigating factors or attacks on Pitcher's prior convictions could allow a sentence of less than ten years and perhaps even a sentence of probation.  No doubt, Pitcher was optimistic that he could receive such a favorable sentence based on counsel's arguments.  However, Pitcher had been advised of the mandatory minimum by the Court, in the Plea Agreement, and in the § 851 Information, and he knew that there was no possibility of a substantial assistance departure.  Aside from Mr. Swafford's significant misconception, he advocated strenuously for his client and ultimately secured a Plea Agreement to a charge with a substantially reduced statutory minimum.  Although his arguments in mitigation could not result in a sentence of less than ten years, they did result in a slight variance and saved Pitcher from a sentence in the range of 151-188. Overall, he obtained a good result under the circumstances.

Pitcher's conclusory, speculative, and unsupported assertions do not warrant an evidentiary hearing.  He has not stated a claim for relief pursuant to 28 U.S.C. § 2255. The Government's Motion to Dismiss is granted.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R.

App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Id.*; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's rulings on Pitcher's motion to be debatable or wrong.

## ORDER

**IT IS ORDERED:**

1. The Government's Motion to Dismiss (Civ. Dkt. 6) is **GRANTED** and Bart M. Pitcher's Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) and (Crim. Dkt. 462) is **DISMISSED**.

2. Bart M. Pitcher's Motion for Hearing (Civ. Dkt. 11) is **MOOT**.

3. No certificate of appealability shall issue. Pitcher is advised that he may still request a certificate of appealability from the Ninth Circuit Court of

Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Pitcher files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals. The district court's file in this case is available for review online at www.id.uscourts.gov.

DATED: February 24, 2015

B. Lynn Winmill
Chief Judge
United States District Court